UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- X

BRAXTON FENNER,

                       Plaintiff,

          - against -

CITY OF NEW YORK,

                       Defendant.

------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

08 Civ. 2355 (BMC)(LB)

**COGAN**, District Judge.

Plaintiff *pro se* brings this action for violation of his rights under the Fourth Amendment to be free from unreasonable search and seizure. Police and Emergency Medical Technicians entered his home and transported him for psychiatric evaluation over his objection. The case is before me on the motion of the sole defendant, the City of New York (the "City"), for summary judgment. Because plaintiff has failed to offer evidence that the alleged violation of his rights occurred pursuant to a municipal policy, custom, or practice, the motion is granted.

## BACKGROUND

The facts set forth below are taken from defendant's Local Rule 56.1 statement, to which plaintiff did not respond and which is therefore accepted as admitted, see McAfee v. Law Firm of Forster & Garbus, No. 06-cv-2925, 2008 WL 3876079, at *3 (E.D.N.Y. Aug. 18, 2008), although the Court has reviewed the evidence submitted on the motion to confirm that the facts in the statement are not genuinely disputed. See Vermont Teddy Bear Co., Inc. v. 1-800

<u>Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004). In addition, plaintiff has offered additional undisputed facts that the Court has accepted to the extent they are relevant.

Plaintiff is a former Assistant District Attorney for Kings County and, thereafter, a former trial attorney for Allstate Insurance Company, where he tried property and casualty cases for Allstate's insureds. On May 26, 2007, he was at home in his apartment with his wife, Hafeeza Fenner, and his friend, Kevin Brown. Ms. Fenner and Mr. Brown had become concerned about plaintiff's mental state, a concern that had grown over the few weeks prior to this incident.[1] As Ms. Fenner testified:

> [T]he best words I can use was, he was really like – his behavior was very irrational. And the concerns was within [sic], like, a three, four week period.
>
> We were upstate [shortly prior to the night in question], my sisters were over … and we were planning dinner, and he … came out and said something to my sister, and then he ended up – packing – getting in the car and driving from upstate, back to the apartment, which was – quite unusual for him.
>
>        \*  \*  \*
>
> I was concerned about his … mental state … . He would pace the floor, he was very hard to talk to . . . . He would sometimes sit there, and he's laughing out loud …. I really wanted him to be looked at. I didn't think the time was something – if it was something that could be done and something was wrong, I wanted [him] to be looked at then. … I didn't feel like I should be waiting ….
>
> I thought he was just stressed out and he was mentally exhausted. And [I] didn't know if there was some kind of chemical imbalance in his body that he needed to get maybe some treatment for? I needed to at least find out . . . .

---

[1] It bears noting that this is the second action that plaintiff has filed in this Court. In the first, <u>Fenner v. Allstate Ins. Co.</u>, No. 08-cv-2357, plaintiff sued Allstate for terminating his employment, allegedly on the ground of racial discrimination. The Court granted summary judgment to Allstate, holding that plaintiff had failed to demonstrate a *prima facie* case of discrimination, and that in any event, certain bizarre behavior in which plaintiff had engaged on the job constituted a legitimate business justification for the termination. This behavior – <u>e.g.</u>, walking out of depositions, being observed crying in the office in a fetal position – occurred shortly prior to the incident giving rise to the instant action.

Acting upon their concern, Ms. Fenner and Mr. Brown agreed that Mr. Brown would go to the lobby of the apartment building and call an ambulance, which he did by calling 911. Plaintiff was unaware that Mr. Brown was making that call.[2]

Responding to the 911 call, police officers arrived first. Ms. Fenner answered the door and stepped into the hallway. She told the officers that she wanted plaintiff taken to the hospital. Plaintiff came to the door, heard what was going on, and told the officers that they were not authorized to enter the apartment. He then closed the door behind him, but one of the police officers put his foot in the door to prevent it from fully closing. The officer asked Ms. Fenner if she lived in the apartment and she responded that she did. At her deposition, she did not remember whether she invited the officers in herself or whether they asked for permission, but she conveyed her consent to their entering the apartment, and they did.

Either with the police officers or shortly thereafter, EMTs who had arrived on the scene entered the apartment. Ms. Fenner advised the EMTs that plaintiff had been hearing voices. Plaintiff continued to protest that the officers and EMTs were violating his constitutional rights by entering, and advised them that he was the only signatory on the lease and thus, in his view, Ms. Fenner did not have the right to consent to their entry. The police officers nevertheless handcuffed plaintiff and the EMTs transported him to Kings County Hospital for a psychological evaluation, classifying him as an emotionally disturbed person ("EDP"). Plaintiff was held approximately six hours and released.

_____

[2] Plaintiff asserts that there is "no evidence" that Kevin Brown called 911, claiming that Ms. Fenner has no personal knowledge of what happened when Mr. Brown left the apartment briefly, and no evidence from Mr. Brown himself one way or the other. However, Ms. Fenner testified that she and Mr. Brown agreed that he would call an ambulance and she observed him leave the apartment to do so, returning five minutes later. The SPRINT report shows that somebody made a 911 call at that time, describing plaintiff as non-violent and having no weapons. Even viewing the facts most favorably to plaintiff, the inference is virtually inescapable that it was Mr. Brown who made the call. In light of the grounds for this Court's disposition of the summary judgment motion, however, it is immaterial whether it was Mr. Brown or somebody else who made the call.

Plaintiff thereupon commenced this action for violation of his constitutional rights. Roughly concurrently, plaintiff filed another action in the Kings County Supreme Court against the same defendant, the City of New York, arising out of the same events. The allegations in the complaint in the state court action are identical to the allegations in the complaint in this Court, except that in the state court action, plaintiff substituted references to the New York State Constitution in place of his invocation of the "Fourth Amendment to the United States Constitution" in the complaint here. This Court denied defendant's motion to abstain under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236 (1976), but urged plaintiff to elect either one of the two fora and bring both the state and federal claims there. Plaintiff declined that invitation and this Court has not been advised of the status of the state court action.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609 (1970)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must "set out specific facts showing a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. Fed. R. Civ. P. 56(e); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003)

4

("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." <u>Anderson</u>, 477 U.S. at 256, 106 S.Ct. at 2514.

Although *pro se* litigants are generally entitled to a broad reading of their submissions because of their lack of familiarity with the law, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96 (1972) (per curiam), that is not the case with attorneys who have chosen to proceed *pro se*. It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required. <u>See, e.g.</u>, <u>Robert v. Dep't of Justice</u>, No. 99-CV-3649, 2001 WL 34077473, at *1 n.2 (E.D.N.Y. Mar. 22, 2001) (finding that even though plaintiff "is appearing *pro se*, plaintiff is an attorney licensed to practice law and therefore is not entitled to special treatment.") (<u>citing</u> <u>Harbulak v. County of Suffolk</u>, 654 F.2d 194, 198 (2d Cir. 1981) (lawyers appearing *pro se* cannot claim the special consideration which the courts customarily grant to *pro se* parties)). That principle should apply with special force to an attorney proceeding *pro se* who is no novice, but an experienced prosecutor and trial lawyer like plaintiff.

Plaintiff has not satisfactorily responded to the primary point raised in defendant's motion, a point which is fatal to his claim: plaintiff has only sued the City of New York, and yet has neither alleged nor offered any evidence of a policy, practice, or procedure that resulted in the violation of his constitutional rights. Plaintiff seems to be under the impression that the City is vicariously liable for the acts of its police officers and paramedics, so that by focusing on their conduct, he can demonstrate a violation of his constitutional rights by the City. That is incorrect.

It is settled law that a municipality is not liable for its employees' constitutional torts unless those torts occur pursuant to a policy or practice implemented by the municipality. "Municipalities may be sued directly under §1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). Municipalities are not exposed to liability under theories of *respondeat superior*, but only under theories that their policies or customs "inflict[ed] the injury upon the plaintiff." Id. Thus, "to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id. Stated otherwise, a municipality has not violated the constitutional rights of a plaintiff unless its agents who did so were acting pursuant to an official policy, practice, or custom.

Plaintiff has addressed only the third requirement for a Monell claim, i.e., the denial of a constitutional right. He has not identified, let alone offered evidence of, any policy or custom of the City that caused this alleged violation. The omission is glaring by itself but particularly so because, as plaintiff himself stresses repeatedly, he is knowledgeable about police practices in the City as a result of his prior employment as an Assistant District Attorney.

The only point plaintiff raises to answer defendant's argument is that he is not suing under 42 U.S.C. §1983, and thus Monell does not apply to his claim. Plaintiff asserts that he "never raised a section 1983 federal statute claim. Only the 4th Amendment US Constitution was claimed in my complaint." However, if plaintiff is not asserting a claim under §1983, then he has no basis for asserting a federal constitutional claim at all. It is firmly established that since Congress has provided a remedy under §1983 for a municipality's violations of

constitutional rights, a direct action under the Constitution does not lie.  See Pauk v. Board of Trustees of City University of New York, 654 F.2d 856, 865 (2d Cir. 1981) ("[W]hen §1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."); Turpin v. Mallet, 591 F.2d 426, 427 (1979) (en banc) ("[T]here is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the City [] under §1983."); Bernstein v. New York, 591 F. Supp. 2d 448, 459 (S.D.N.Y. 2008) ("The availability of a §1983 action precludes an action for direct relief under the constitution.") (quoting Gleason v. McBride, 715 F. Supp. 59, 62-63 (S.D.N.Y. 1988)); Koumantaros v. City University of New York, No. 03-cv-10170, 2007 WL 840115, at *5 (S.D.N.Y. March 19, 2007) (after dismissing plaintiff's §1983 claim, court dismissed claim purportedly brought directly under the Constitution, holding that "because §1983 provides a remedy for plaintiff's causes of action, plaintiff cannot base her constitutional claims directly on the Fourteenth Amendment.").  Plaintiff cannot evade the requirements of Monell by suing directly under the Constitution because the City has no liability for such violations unless the criteria set forth in Monell are satisfied.

At most, plaintiff has identified a single incident of a constitutional violation.  Even assuming such a violation occurred (and this Court expresses no view on that), the Supreme Court has squarely held that this is insufficient to create liability under Monell.  See Oklahoma v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell.").

## CONCLUSION

Defendant's motion for summary judgment is granted. The complaint is dismissed.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
December 21, 2009